O

NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WELLS FARGO BANK, N.A., as trustee for BENJAMIN CABAL 2007 INSURANCE TRUST,<br><br>           Plaintiff,<br><br>    v.<br><br>AMERICAN NATIONAL INSURANCE COMPANY, a Texas corporation,<br><br>           Defendants. | Case No. CV 09-01840 DDP (RZx)<br><br>**ORDER FOR ENTRY OF JUDGMENT FOLLOWING APPEAL AND REMAND**<br><br>[Dkt. No. 173] |

Before the court is Plaintiff Wells Fargo Bank, N.A., as Trustee for Benjamin Cabal 2007 Insurance Trust (the "Insurance Trust")'s Motion for Entry of Judgment Following Appeal and Remand. Having considered the parties' submissions, the court adopts the following order.

**I. Background**

    **A.    Factual History**

The undisputed facts of this case were stated as follows in this court's Order of April 4, 2010. (Dkt. No. 115). The Insurance Trust owns a $4 million life insurance policy (the

"Policy") insuring the life of Benjamin Cabal, which defendant and counterclaim plaintiff American National Life Insurance Company ("ANICO") issued on October 16, 2007. (Statement of Uncontroverted Facts ("SUF") ¶¶ 1-2.) The Insurance Trust is the beneficiary of the Policy. (Id. ¶ 4.) When the Insurance Trust was formed, and when the Policy was issued to the Insurance Trust, Mr. Cabal's wife, Thelma Cabal, was the beneficiary of the Insurance Trust. (Id. ¶ 22.) The beneficial interest in the Insurance Trust was sold to The CAP Accumulation Trust on January 15, 2008, in exchange for $133,988.07. (Id. ¶¶ 23-25.)

At some point, The CAP Accumulation Trust discovered that the Financial Statement Questionnaire submitted with Mr. Cabal's application for the Policy contained several misrepresentations that vastly overstated Mr. Cabal's assets and income. (Id. ¶¶ 14-20.) The insurance agent who procured the Policy was Tigran Khrlobian of Prolinks Insurance. (Id. ¶ 9.)

On June 30, 2008, The CAP Accumulation Trust commenced a lawsuit against various defendants alleging that it had purchased the beneficial interest in the Insurance Trust, along with forty-eight other insurance trusts owning life insurance policies, in reliance upon material misrepresentations by insurance agents Mr. Khrlobian, Razmik Kachatourians, and their insurance agency Prolinks Insurance (and affiliated companies). (Id. ¶¶ 27-28.) It also alleged that Mr. Khrlobian, Mr. Kachatourians, and Prolinks Insurance had submitted life insurance applications containing material misrepresentations about the financial condition of Mr. Cabal and the other people whose lives were insured by the policies owned by the various other insurance trusts. (Id. ¶ 29.)

On September 18, 2008, counsel for the Insurance Trust and The CAP Accumulation Trust sent a letter to ANICO notifying it about the lawsuit and demanding "consensual rescission of the insurance policy and a return of all premiums paid to American National." (Rappaport Decl. Ex. 5 at p.2.) Following this letter, and in response to a request by ANICO, counsel for the Insurance Trust and The CAP Accumulation Trust provided ANICO with additional information supporting its belief that the application for the Policy contained material misrepresentations about Mr. Cabal's financial condition. (SUF ¶ 34.)

**B. Procedural History**

On March 18, 2009, Wells Fargo, as Trustee for the Insurance Trust, filed this lawsuit against ANICO. The Complaint alleges that "based upon the material misrepresentations and concealments of fact by Prolinks, Khachatourians and Khrlobian, the Insurance Trust has a right to demand rescission of the Policy and American National must return to the Insurance Trust all premiums paid to date for the Policy, with interest." (Compl. ¶ 16.) Wells Fargo prayed for a judicial declaration that:

> (i) the Policy is rescinded and American National is obligated to return to the Insurance Trust all premiums paid for the Policy, with interest; or (ii) the Policy is in force and American National may not refuse to pay benefits or seek rescission of the Policy based upon purported material misrepresentations in the insurance application.

(Id. 5:25-6:3.)

ANICO filed an Answer to the Complaint on April 13, 2009, asserting rescission as an affirmative defense:

> By reason of the falsity and untruth of the statements and representations and concealment of material facts, ANICO has and hereby does rescind the Policy and hereby tenders

3

> all premiums paid on account of the Policy, subject to an offset, in the Court's discretion, for such sums paid by ANICO in commissions, the cost of providing insurance, and other costs relating and directly connected to the issuance of the Policy.

(Answer ¶ 11.) In addition, ANICO filed a Counterclaim against Wells Fargo on April 20, 2009, asserting a single cause of action for declaratory relief and rescission on the grounds that (1) the Policy was procured based on Mr. Cabal's misrepresentations and (2) the Policy is void ab initio for lack of an insurable interest. ANICO prayed for a declaratory judgment stating that (1) the Policy is rescinded due to Mr. Cabal's misrepresentations, or (2) the Policy is void <u>ab initio</u> because it lacked an insurable interest, and (3) ANICO must refund premiums paid "with an offset, in the Court's discretion, for such sums reasonably paid by ANICO in commissions, the cost of procuring and providing the insurance, and other costs associated with the Policy." (Counterclaim 7:16-27.)

Wells Fargo filed a motion to strike from the pleadings ANICO's request to retain an "offset" from any premiums it must return to the Insurance Trust. On August 12, 2009, the Court granted the motion to strike, holding that "the rescission of an insurance contract results in the full return of premiums." (Aug. 12, 2009 Order 6:17-20 (citing <u>Imperial Casualty & Indem. Co. v. Sogomonian</u>, 198 Cal. App. 3d 169, 184 (1988).)

On April 19, 2010, Wells Fargo filed this Motion for Summary Judgment on the Complaint and Counterclaim, arguing that there is no dispute that the Policy is rescinded and that ANICO must return all premiums paid, with interest. ANICO opposed the motion on the grounds that (1) the Policy is void ab initio for lack of an insurable interest, which precludes Wells Fargo "from recovering

4

its premiums paid," (Opp'n 7:14-17); and (2) the Insurance Trust "is not a mere innocent purchaser, and equity requires a result different from the one sought by Wells Fargo," (id. 7:18-20). On August 4, 2010, this court sua sponte granted summary judgment in favor of ANICO on its Counterclaim, and granted in part and denied in part Wells Fargo's Motion for summary judgment. The court held "that Wells Fargo has no right to seek rescission of the Policy, that the Policy is not void for lack of an insurable interest, that Anico has not waived its right to rescission, and that ANICO has validly rescinded the Policy due to Mr. Cabal's material misrepresentations."

ANICO appealed that portion of the August 4, 2010, Order holding that the Policy had an insurable interest. ANICO also appealed the August 12, 2009, Order striking from ANICO's Counterclaim allegations seeking to retain part of the premium to offset commissions and overrides that ANICO alleged it had paid to the insurance agents and Total Financial & Insurance Services.

In a Memorandum Opinion dated August 10, 2012, the Ninth Circuit affirmed this court's August 4, 2010, Order finding that the Policy had an insurable interest. Wells Fargo Bank, N.A. v. American Nat. Ins. Co., 493 Fed.Appx. 838, 840 (2012). It reversed the April 20, 2009, Order granting the motion to strike as procedurally improper and remanded the action, holding that "Federal Rule of Civil Procedure 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." Id. at 839 (alterations omitted; referring to Whittlestone Inc. v. Handi-Craft Co., 618 F.3d 970, 974-75 (9th Cir. 2010).). The Ninth Circuit also noted

that "the district court may not have considered California Civil Code Section 1692," which allows the court to consider equities, and stated that "[a]lthough ANICO is not <u>entitled</u> to its requested relief, on remand the district court may determine whether, under Section 1692, a consideration of the equities permits ANICO to retain some or all of its incurred costs." <u>Id.</u> at 839 n.1.

**II. Discussion**

In this Motion, Wells Fargo, for the Trust, argues that this court did consider California Civil Code § 1692 in its August 12, 2009, Order granting the Motion to Strike, and that this court found that equity does not permit ANICO to retain its premiums. ANICO asks the court to consider the equities and allow ANICO to offset the $593,868.28 in premium with its incurred costs of $736,494.97. ANICO asserts that it is the only innocent party in this action and that any other result would lead to the unjust enrichment of the plaintiffs at ANICO's expense.

The court finds that in its August 12, 2009, Order granting the Motion to Strike, it did consider California Civil Code § 1692 and found that the equities did not entitle ANICO to offset its premiums. <u>See</u> August 12, 2009, Order, pp. 6-7. Even if that were not the case, the court now finds that equities do not justify an offset for ANICO.

ANICO argues that equity entitles it to offset the $593,868.28 in premium with $736,494.97, which comprises $193,780.81 in commissions paid to Krhlobian and related entities, $53,796 in production bonus paid to Krhlobian, $172,735.23 in "net mortality cost" or the "cost of providing $4 million in life insurance coverage for an elderly man for more than three years," and

6

$316,182.93 in attorney's fees and costs from this lawsuit. (Opp. at 13.) ANICO points out that the primary purpose of rescission is to "restore both parties to their former position as far as possible, Runyan v. Pac. Air Indus., Inc., 2 Cal.3d 304, 316 (1970), and asserts that it will not be returned to the same position without an offset.

ANICO does not claim that it paid any benefits to the Trust under the insurance policy. If it had, those benefits could have been offset against the premium when the policy was rescinded. See Imperial Casualty & Indemnity Co. v. Sogomonian, 198 Cal.App.3d 169 (1988)("The consequence of rescission is not only the termination of further liability, but also the restoration of the parties to their former positions by requiring each to return whatever consideration has been received. Here, this would require the refund by [the insurance company] of any premiums and the repayment by the defendants of any proceeds advance which they may have received."). However, as this court found, "[n]owhere in its counter-complaint does [ANICO] state that it disbursed any type of insurance coverage that entitles it to retain premiums." (August 12, 2009, Order at 6.) ANICO did not pay out any benefits because the Policy was a life insurance policy and Mr. Cabal was alive when the Policy was rescinded.

ANICO asserts that although it did not pay out benefits, it should recover the "net mortality cost," or the costs of providing the life insurance policy. The court is not convinced that this cost was more than theoretical. Albert J. Amato describes it as "the cost of assuming the risk that the insured may die while the policy is in force." (Decl. Amato ¶ 4.) The net mortality cost

7

does not represent any expenditures made during the period that the policy was in effect. Thus, restoring ANICO to its former position would not require offsetting the net mortality cost, which does not appear to have been an actual disbursement.

ANICO argues that equity requires offsetting the commissions paid to Khrlobian and related entities because it cannot recover those commissions from Khrlobian due to his bankruptcy, and the inability to recover the commissions leaves ANICO in a worse position than if it had never issued the Policy, an inequitable result. The inequity of this result, ANICO asserts, is due in large part to the fact that ANICO was "the only innocent party to the transaction" and the fact that California law has since prohibited such insurance schemes. (Opp. at 13-14.)

The court has already found that the Policy was not void <u>ab initio</u> for lack of an insurable interest and that "such a scheme was not, at the time, prohibited under California law." (August 4, 2010, Order at 9.) The fact that California law subsequently changed does not render the scheme illegal prior to that change in the law. Thus, this point does not weigh in favor of offsetting the premium.

Although the court did find that ANICO and not the Insurance Trust was the "injured" or "defrauded" party, it did not find that the Insurance Trust was the perpetrator of the fraud; it found that in the context of determining which party could seek rescission, the Insurance Trust was benefitting from the Policy whereas ANICO had been defrauded by the misrepresentations. (Aug. 4, 2010, Order at 6.) Those misrepresentations were made not by the Insurance Trust but by ANICO's insurance agents and by Mr. Cabal. There is no

indication that the Insurance Trust was involved in perpetrating the misrepresentations. The CAP Accumulation Trust discovered the misrepresentations after the Policy was issued. (August 4, 2010, Order at 2.) The Insurance Trust's lack of involvement is reflected in the fact that ANICO did not assert a tort claim against the Insurance Trust, but only against the insurance agents, Mr. Cabal, and Examination Management Services, Inc.

While acknowledging that ANICO was a defrauded party, the court also notes the crucial fact that the misrepresentations underlying the Policy were perpetrated by ANICO's own agents. ANICO does not dispute this fact. As a result, ANICO was in the best position to monitor those agents in order to ensure that fraud was not being committed. It is therefore fitting that ANICO not recover the commissions paid to the agents. Those commissions were a byproduct of the agency relationship. Because ANICO was in a position from which it had the ability and responsibility to monitor and control its agents, equity does not require that those agents' commissions be deducted from the premium ANICO would otherwise return to the Insurance Trust.

Finally, the court has already found that ANICO is not entitled to attorney's fees by statute or agreement. (August 12, 2009, Order at 7.) Because equity does not justify the offset of the premium by any other fees, the court finds that there should also be no offset of attorney's fees and costs.

**III. Conclusion**

For these reasons, the court orders entry of judgment in the same form as the original September 9, 2010, Judgment, requiring ANICO to return to the Insurance Trust the entire $593,868.28 in

9

premium without offset and with prejudgment interest from April 20, 2009.  The Insurance Trust is hereby directed to submit a proposed judgment substantially similar to the Judgment entered on September 9, 2010.

IT IS SO ORDERED.

Dated: May 17, 2013

DEAN D. PREGERSON
United States District Judge